IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HESTER ADAMS,                        §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §      CIVIL ACTION NO. H-12-01627
                                     §
CAROLYN COLVIN,[1]                   §
ACTING COMMISSIONER OF THE           §
SOCIAL SECURITY ADMINISTRATION,      §
                                     §
        Defendant.                   §

## MEMORANDUM AND RECOMMENDATION

Pending before the court are Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Cross Motion for Summary Judgment (Doc. 11). The court has considered the motions, the responses thereto, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and that the Defendant's motion be **GRANTED.**

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claim for

---

[1]     Michael Astrue was the Commissioner of the Social Security Administration at the time that the Plaintiff filed this case but no longer holds that position. Carolyn W. Colvin is Acting Commissioner of the Social Security Administration and, as such, is automatically substituted as Defendant. See Fed. R. Civ. P. 25(d).

disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act").

## A.  Medical History

Plaintiff was born on August 15, 1956, and was fifty-three years old on May 31, 2009, the alleged onset date of the disability.[2]  Plaintiff has a high school education and worked as a home health aide until the alleged onset date.[3]

In 2000, Plaintiff had two back surgeries after falling off a ladder.[4]  She continued to receive treatment for pain associated with the surgeries.[5]  Plaintiff was diagnosed with mild diffuse spondylosis and facet joint hypertrophy in August 2004.[6] During a visit to East Houston Medical Center in 2006, no acute lung problems were found when a chest x-ray was performed.[7]

In 2008, Plaintiff was also diagnosed with reactive air airway disease and sought medication to treat wheezing and shortness of breath but was not found to have any acute lung abnormalities.[8]

---

[2]  See Tr. of the Admin. Proceedings ("Tr.") 11, 23, 41-44, 54, 108, 123, 126, 142, 169, 179.

[3]  See Tr. 21, 23, 126-42, 149-50.

[4]  See Tr. 283.

[5]  See Tr. 26-27, 52-53, 147, 155, 193-94, 309.

[6]  See Tr. 230, 261.

[7]  See Tr. 219-23, 229, 247, 262.

[8]  See Tr. 279-81, 355.

She was prescribed an inhaler, Prednisone, and Claritin.[9]  In May 2009, she injured her back while carrying a patient during her job as a home health aide.[10]

On November 12, 2009, Plaintiff saw Luis Granier, M.D., ("Dr. Granier") for back pain.[11]  Although Plaintiff stated that she quit her job due to back pain, she attributed the pain to her initial injury in 2000 without mention of her re-injury in 2009.[12] Plaintiff reported that she was told that she needed a fusion surgery in her back, but it had not been performed.[13]

At that visit, she reported that she was limited to standing about fifteen to twenty minutes at a time, walking less than a block, and sitting slightly longer than twenty minutes.[14]  Plaintiff also reported that her sons prepared her meals because she could no longer do so.[15]  She reported that she started smoking half a pack of cigarettes a day at the age of twenty-five years, but, as of the appointment date, she was only smoking a few cigarettes daily.[16] Dr. Granier found that Plaintiff had shortness of breath and a

---

[9]     See Tr. 270-72.

[10]    See Tr. 26, 52.

[11]    See Tr. 283.

[12]    See id.

[13]    See id.

[14]    See id.

[15]    See id.

[16]    See id.

frequent cough but saw no problems in the chest x-ray.[17]  Using x-rays of Plaintiff's spine, Dr. Granier diagnosed Plaintiff with very mild multiple level lumbar anterior spondylosis.[18]

On March 27, 2010, Plaintiff went to Aldine Clinic to see Dr. Phuc Nguyen, M.D., ("Dr. Nguyen") for back pain and difficulty breathing.[19]   Dr.  Nguyen  diagnosed  Plaintiff  with  Chronic Obstructive Pulmonary Disease ("COPD"), low back pain, and Tobacco Use Disorder.[20]   Plaintiff reported that she desired to stop smoking, and Dr. Nguyen also advised her to do so.[21]  Dr. Nguyen prescribed Prednisone and Azithromycin for COPD.[22]  He discontinued previously prescribed medications for back pain and COPD.[23]

On May 21, 2010,[24] Plaintiff saw Kristine Aura Parunago Ortega, M.D., ("Dr. Ortega") at Aldine Clinic for back and shoulder pain.[25] Dr. Ortega listed low back pain, COPD, radiculopathy, and urinary incontinence as the primary diagnoses.[26]   For the back pain, Dr.

---

[17]    See Tr. 285.

[18]    See Tr. 286.

[19]    See Tr. 334.

[20]    See id.

[21]    See Tr. 337.

[22]    See id.

[23]    See id.

[24]    Plaintiff saw a registered nurse on May 20, 2010, for nausea and was told to return to the clinic the following day to see a doctor. See Tr. 328-31.

[25]    See Tr. 318, 324.

[26]    See Tr. 319.

Ortega prescribed several medications to help Plaintiff sleep and for back pain: Gabapentin, Ibuprofen, Prednisone, and Zolpidem.[27] Plaintiff stated that she had stopped taking Cyclobenzaprine and Naproxen[28] for back pain because they made her nauseous.[29]

Dr. Ortega also ordered a Magnetic Resonance Imaging ("MRI") scan of the spine and a needle Electromyography ("EMG").[30] For the COPD, Dr. Ortega prescribed Symbicort and Proventil.[31] Plaintiff reported that she had intermittent pain radiating from her back to her legs.[32] The MRI showed mild to moderate spondylosis and facet arthropathy.[33] Sam Rolon, D.O., ("Dr. Rolon") reviewed the medical notes taken by Dr. Ortega and agreed with her diagnosis.[34]

On July 19, 2010, Plaintiff returned to Dr. Ortega for body numbness and a blood pressure check.[35] Plaintiff reported that the body soreness was a ten on a ten-point scale and that it was aggravated by movement but alleviated by resting.[36] Dr. Ortega

---

[27]   See Tr. 321-22, 325-26.

[28]   In fact, Dr. Nguyen had discontinued both Cyclobenzaprine and Naproxen during her visit on March 27, 2010. See Tr. 336.

[29]   See Tr. 324.

[30]   See id.

[31]   See Tr. 323.

[32]   See Tr. 324.

[33]   See Tr. 353-54.

[34]   See Tr. 324.

[35]   See Tr. 313.

[36]   See id.

diagnosed Plaintiff with myalgia, COPD, liver mass, and hypertension.[37]  Dr. Ortega reported that there were no problems with the respiratory system and noted that Plaintiff did not have a cough or difficulty breathing.[38]  Regarding medications, Plaintiff stated that Gabapentin made her nauseous.[39]  In addition to the medications prescribed in the earlier visit, Dr. Ortega also prescribed Cyclobenzaprine[40] and Clotrimazole.[41]

## B.  Application to Social Security Administration

Plaintiff protectively filed for disability insurance benefits and for supplemental security income on October 14, 2009, due to lower back pain and COPD.[42] In a disability report filed the day of Plaintiff's application, she reported that she stopped working because of constant lower back pain, breathing problems from COPD, blood pressure problems, and anxiety.[43]  No medications were listed in the report.[44]

Plaintiff stated that at her past job as a caretaker, she

---

[37]   See Tr. 308.

[38]   See Tr. 314.

[39]   See Tr. 313.

[40]   Dr. Nguyen had discontinued this medication in March 2010.  See Tr. 336.

[41]   See Tr. 310.

[42]   See Tr. 48, 116-25, 147.

[43]   See Tr. 147.

[44]   See Tr. 150.

bathed patients, prepared their meals, and performed basic house cleaning.[45]  This job required her to lift patients when moving them from a bed to a chair or vice versa.[46]  Plaintiff also reported that this job required her to walk four hours a day, handle/grasp big objects, reach, and write/type two hours daily along with standing, stooping, and kneeling one hour daily.[47]

A vocational expert, Diana Elliott ("Elliott"), opined that Plaintiff could perform a wide range of light work and opined that potential jobs included playroom attendant.[48]

Undated disability reports show that Plaintiff visited the East Houston Medical Center from 2009 to 2010, the LBJ General Hospital in 2010, and the Southwest Memorial Hermann Hospital in 2010, for COPD, depression, diabetes, and back pain.[49]  Both reports indicate that Plaintiff reported taking Alprazolam for depression, Carisoprodol for muscle spasms, and Hydrocodone for pain.[50] Plaintiff did not list any side effects from the medications.[51]

---

[45]     See Tr. 148.

[46]     See id.

[47]     See id.

[48]     See Tr. 153-54.

[49]  In the record before the court, however, visits to the mentioned hospitals occurred prior to the alleged onset date, which is inconsistent with the time periods Plaintiff listed in her disability report.  The court relies on the dates in the medical records.  See Tr. 162-63, 172-73, 209-81.

[50]     See Tr. 164, 174.

[51]     See id.

On November 16, 2009, Robin Rosenstock, M.D., ("Dr. Rosenstock") performed a physical Residual Functional Capacity ("RFC") assessment.[52]  She accepted the diagnosis of mild lumbar spondylosis and asthma.[53]  In Dr. Rosenstock's opinion, Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for two to four hours in an eight-hour workday, sit for about six hours out of an eight-hour workday, and push and/or pull without limitations.[54]  Dr. Rosenstock also found that Plaintiff could occasionally climb a ladder, rope, or scaffolds while frequently being able to climb ramps or stairs, stoop, kneel, crouch, and crawl.[55]  Dr. Rosenstock noted that Plaintiff performed poorly when hopping, squatting, and raising from squatting but that her gait was normal.[56]  Patty Rowley, M.D.,("Dr. Rowley") concurred with the above RFC assessment.[57]

On November 19, 2009, Plaintiff's initial application was denied[58] and she applied for reconsideration on March 24, 2010.[59]

---

[52]     See Tr. 287.

[53]     See id.

[54]     See Tr. 288.

[55]     See id.

[56]     See Tr. 294.

[57]     See Tr. 295.

[58]     See Tr. 59-64.

[59]     See Tr. 69-71.

Plaintiff's reconsideration application was denied,[60] and the Administrative Law Judge ("ALJ") granted her request for a hearing, which he scheduled for September 20, 2010.[61]

## C. **Hearing**

Plaintiff and vocational expert Kay Gilreath ("Gilreath") testified at the hearing.[62]

Plaintiff testified that she had to quit work in May 2009 because she re-injured her back while lifting a 300-pound patient during her employment as a home health aide.[63]  She reported that the patient fell on her, and the fall intensified the pain from her two prior back surgeries.[64]  Plaintiff also reported that she weighed 163 pounds, was 5-feet-5-inches tall, and obtained a high-school-level education.[65]  She reported that she smoked occasionally.[66]

In addition, Plaintiff stated that she could not dress, bathe, or get out of bed by herself.[67]  Plaintiff cited back pain and coughing every fifteen to twenty minutes as the reasons she stopped

---

[60]     See Tr. 70-74.

[61]     See Tr. 87-109.

[62]     See Tr. 15-40.

[63]     See Tr. 26-27.

[64]     See Tr. 26.

[65]     See Tr. 23-24.

[66]     See Tr. 24-25.

[67]     See Tr. 28, 30.

working.[68]   She reported that she was taking several medicines: Darvocet two to three times a day, Ibuprofen two to three times a day, steroids four times a day, at least one inhaler once a day, Effexor, and Zolpidem.[69]   Plaintiff's attorney verified that Dr. Rolon prescribed these medications on September 17, 2010.

Having reviewed the record and after hearing Plaintiff's testimony, Gilreath testified that Plaintiff's past work as a home health aide constituted semi-skilled work performed at a medium to heavy level of exertion, depending on whether the job involved lifting patients.[70]   Gilreath also testified that Plaintiff's skills were transferable to the full range of light jobs.[71]

The ALJ posed a hypothetical question to Gilreath about whether an individual of Plaintiff's age and education level, who was able to walk/stand two to four hours, sit for six hours, lift and carry twenty pounds occasionally and ten pounds frequently, occasionally climb ropes, ladders, or scaffolds, and frequently balance, scoop, kneel, crouch, and crawl would be able to perform Plaintiff's past work.[72]   The hypothetical individual also was

---

[68]   Plaintiff claimed that she suffered from anxiety as well but no medical records involving mental health are before the court. See Tr. 23, 29-30, 34-37.

[69]   See Tr. 32-34.

[70]   See Tr. 20-21.

[71]   See Tr. 39.

[72]   See Tr. 37.

required to avoid poor ventilation as well as concentrations of fumes, odors, gases, wetness, and humidity.[73]  Gilreath responded that the hypothetical individual would not be able to perform Plaintiff's past work.[74]

Gilreath identified the following unskilled, light jobs that could be performed by the previously mentioned hypothetical individual: ticket seller, electronics assembler, and booth cashier.[75]  Gilreath further testified that the noted occupations would accommodate the limitations of alternating sitting and standing, the ability to carry out only simple instructions, and making judgments only on simple work-related decisions.[76]

Plaintiff's attorney asked whether the hypothetical individual would be able to perform the aforementioned jobs if she had to lie down one to two hours a day due to the effects of medications, to which Gilreath responded in the negative.[77]  Additionally, Plaintiff's attorney questioned whether the hypothetical individual would be able to perform the identified jobs if she lost concentration beyond an hour at a time due to the effects of

---

[73]    See id.

[74]    See id.

[75]    See Tr. 38.

[76]    See id.

[77]    See id.

medications, to which Gilreath also responded in the negative.[78]

D. **Commissioner's Decision**

On October 8, 2010, the ALJ issued an unfavorable decision.[79] The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 31, 2009, and that she had multiple severe impairments: mild lumbar spondylosis and asthma.[80]   The ALJ also noted that the Plaintiff's claim of a low IQ[81] did not "interfere with the individual's ability to work" and, therefore, was not a severe impairment.[82]   According to the ALJ, Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any of the listings of the regulations[83] (the "Listings").[84]

In reaching that conclusion, the ALJ considered the entire record including x-rays, MRIs, Dr. Granier's notes, and the medications prescribed during the relevant time period.[85]   The ALJ

---

[78]     See Tr. 39.

[79]     See Tr. 45-58.

[80]     See Tr. 50.

[81]     According to Plaintiff's attorney during the ALJ hearing, Plaintiff has a low Intelligence Quotient (IQ). During the hearing, however, Plaintiff stated that she has a high school education, could read and write English, and could do basic arithmetic.  See Tr. 23, 147.

[82]     Tr. 51.

[83]     See Tr. 51.

[84]     20 C.F.R. Pt. 404, Subpt. P, App. 1.

[85]     See Tr. 52.

found that Plaintiff could perform light work with limitations:
stand and/or walk for up to six hours; lift and/or carry twenty
pounds occasionally and ten pounds frequently; frequently balance,
stoop, kneel, crouch, and crawl; sometimes climb ropes, ladders, or
scaffolds; and avoid exposure to concentrations of wetness,
humidity, fumes, odors, gases, and poor ventilation.[86]

   Despite the fact that ALJ found that Plaintiff's medically
determinable impairments could cause the alleged symptoms, the ALJ
did not find Plaintiff's statements regarding the "intensity,
persistence, and limiting effects of the symptoms" to be credible
to the extent alleged.[87]   The ALJ stated that the medical evidence
was inconsistent with the "degree of pain and limitation alleged"
by Plaintiff.[88]   Specifically, the ALJ pointed out that Plaintiff
did not exhibit during the hearing one of the alleged symptoms,
coughing every fifteen to twenty minutes.[89]   The ALJ also mentioned
that Plaintiff testified that she smoked cigarettes on occasion.[90]

   Relying on the RFC assessment by Dr. Rosenstock and the
vocational expert's testimony, the ALJ found that Plaintiff could

---

[86]     See Tr. 51.

[87]     Tr. 53.

[88]     See id.

[89]     See Id.

[90]     See id.

not perform her past work.[91]  After making that determination, the ALJ considered whether Plaintiff could transfer her work skills to other jobs.[92]  The ALJ evaluated Plaintiff's RFC along with the vocational expert's testimony and concluded that Plaintiff could perform the light, unskilled jobs identified by the vocational expert during the hearing.[93]

Plaintiff appealed the ALJ's decision, and the Appeals Council granted review on February 27, 2012.[94]  The Appeals Council agreed[95] with the ALJ's decision regarding Plaintiff's disability determination.[96]  Relying on the medical records and vocational expert's testimony, the Appeals Council found that Plaintiff's subjective complaints were not fully credible and that her severe impairments did not meet or equal a Listing.[97]  Based on the RFC assessment, the Appeals Council stated that Plaintiff could still perform light work with limitations.[98]  The Appeals Council's

---

[91]     See Tr. 53-54.

[92]     See Tr. 54-55.

[93]     See id.

[94]     See Tr. 4-9.

[95]     The Appeals Council found that Plaintiff was actually in the "individual approaching advanced age" category instead of the "advanced age" category, where the ALJ had initially placed Plaintiff.  See Tr. 5.

[96]     See Tr. 4-5.

[97]     See Tr. 6.

[98]     See Tr. 6.

14

decision became the final decision of the Commissioner.[99]

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

### A. <u>Legal Standard</u>

In order to obtain disability benefits, a claimant bears the burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991).  Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); <u>see also</u> <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that

---

[99]    42 U.S.C. § 405(g).

disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who was working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. §§ 404.1520, 416.920.  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999).  If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

## B. Substantial Evidence

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  It is "something more than a

scintilla but less than a preponderance." Id. The Commissioner has the responsibility of deciding any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). In other words, the court is to defer to the decision of the Commissioner as much as possible without making its review meaningless. Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits. Defendant argues that the decision is legally sound and is supported by substantial evidence.

Plaintiff asserts that the ALJ's decision contains two errors: (1) the ALJ improperly found that Plaintiff's claims were not credible to the extent alleged; (2) the ALJ's RFC assessment is not supported by substantial evidence. The court considers the merits

17

of the arguments in turn.

## A. **Credibility**

Plaintiff asserts that, based on the medical record, the ALJ improperly discredited her complaints of pain.  The court considers whether there was substantial evidence supporting the ALJ's determination that Plaintiff's pain was not severe enough to be considered disabling.

Pain is considered a disabling impairment only when pain is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).  Subjective complaints must be corroborated by objective medical evidence.  Id.  The mere existence of some pain, however, is not enough to meet the standard for debilitating pain required for disability benefits.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).

Despite Plaintiff's numerous statements that she was limited in her walking due to her leg and back pain, the medical record does not consistently corroborate this assertion.  In the span of November 2009 to July 2010, Plaintiff saw three doctors over four visits but did not complain of severe back pain at every visit.

At the first two appointments in that time span, Plaintiff was not prescribed medication for her back pain.[100]  During her visit with Dr. Granier, Plaintiff mentioned her original back injury in

---

[100]     See Tr. 283-86, 334-37.

2000, but did not cite her alleged re-injury that occurred mere months before the doctor visit.[101]   In fact, Plaintiff did not provide any records showing that Dr. Granier prescribed medication for back pain.[102]   Furthermore, Dr. Nguyen discontinued her back pain medication and did not prescribe a replacement.[103]

During her last visit with Dr. Ortega, Plaintiff's reason for the visit was overall body aches and tingling, neither of which was explicitly linked to back pain.[104]  During the same visit, Plaintiff was prescribed a pain medication that she stopped taking in May 2010 because it made her nauseous.[105]  Over the entire span, she was prescribed pain medication for only two out of four visits. Plaintiff cites her own statements as proof of her pain but is not able to point to medical records reflecting complaints of such a high level of pain to be considered "constant" and "unremitting."

Moreover, Plaintiff's behavior at the hearing itself was inconsistent with prior reports.  In particular, the ALJ noted that Plaintiff did not cough once during the thirty-minute hearing although she claimed she had to cough every fifteen minutes.[106]

---

[101]   See Tr. 283.

[102]   See Tr. 283-86.

[103]   See Tr. 337.

[104]   See Tr. 313.

[105]   See Tr. 310, 324.

[106]   See Tr. 53.

Finding that this inconsistency affected Plaintiff's overall credibility concerning her symptoms, the ALJ appropriately discounted Plaintiff's complaints of pain.

The lack of consistency in the severity of Plaintiff's alleged back pain coupled with Plaintiff's behavior during the hearing provide more than a scintilla of evidence in support of the ALJ's pain determination.

## B. **Lack of Substantial Evidence**

Plaintiff argues that the ALJ improperly determined that Plaintiff could do light work with limitations.[107]  The court addresses whether there is substantial evidence to support the ALJ's finding.

A claimant's RFC is her remaining ability to work despite all of her limitations resulting from her impairment. See 20 C.F.R. § 404.1545(a); Villa v. Sullivan, 895 F.2d 1019, 1023 (5th Cir. 1990).  In evaluating the claimant's RFC, the ALJ is directed by the regulations to consider how the claimant's impairment affects her physical, mental, and other abilities, as well as the total limiting effects of her impairment.  See 20 C.F.R. § 404.1545.

After arriving at an RFC that takes into account all of the restrictions "reasonably warranted by the evidence," an ALJ may rely on the response of a vocational expert to a hypothetical question on job availability as it relates to a person with the

---

[107]   Doc. 12, Pl.'s Mot. For Summ J. pp. 11–14.

claimant's limitations.  Dominque v. Barnhart, 388 F.3d 462, 463 (5th Cir. 2004); see also Masterson v. Barnhart, 309 F.3d 267, 273-74 (5th Cir. 2002).  In order to serve as substantial evidence, the vocational expert's testimony must be based on a hypothetical question that incorporates all of the limitations recognized by the ALJ and must be subject to the claimant's cross-examination.  See Masterson, 309 F.3d at 274; Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).

The Commissioner appropriately applied these legal standards in this case.  The ALJ formulated Plaintiff's RFC by reviewing medical records, Dr. Rosenstock's assessment, and the vocational expert's testimony regarding Plaintiff's remaining ability. Gilreath testified that Plaintiff could perform the full range of light work.[108]  The ALJ recognized several limitations regarding Plaintiff's physical ability including standing/walking for two to fours hours, sitting for less than six hours, and avoiding concentrations of fumes, odors, wetness and humidity.[109]  This hypothetical included all of the restrictions set forth in the ALJ's decision.[110]  The ALJ went even further in the hypothetical to impose the additional restriction that the individual would

---

[108]   See Tr. 39.

[109]   See Tr. 37.

[110]   See Tr. 51.

alternate  sitting  and  standing.[111]    Incorporating  these
restrictions, the ALJ posed a hypothetical question to Gilreath.
She responded that Plaintiff could not perform her past job but
that she could perform the full range of light work.[112]

After the ALJ posed the hypothetical, Plaintiff's attorney
cross-examined Gilreath and asked if the hypothetical individual
would be able to perform the identified jobs if she had to lie down
one to two hours a day due to the effects of medications.[113]
Gilreath  stated  that  this  would  "rule  out  all  competitive
employment."[114]  Plaintiff's attorney also asked if the individual
could perform the identified jobs if she could not concentrate for
more than an hour at a time due to the effects of medications, to
which Gilreath responded in the negative.[115]    The record, however,
does  not  contain  any  evidence  that  Plaintiff  suffers  from
medication side effects that interfere with her ability to work.
Other than nausea, Plaintiff reported no side effects, either to
her doctors or in disability reports submitted to the Social
Security Administration.

Moreover,  the  ALJ's  RFC  is  more  restrictive  than  Dr.

---

[111]    See Tr. 38.

[112]    See Tr. 37-39.

[113]    See Tr. 38.

[114]    Id.

[115]    See Tr. 39.

Rosenstock's RFC assessment.  In particular, the ALJ places the additional restriction that Plaintiff must avoid certain fumes and odors, a limitation which Dr. Rosenstock's report did not include.[116]

Because the ALJ posed a hypothetical that incorporated all of the RFC restrictions and allowed the vocational expert to be cross-examined, there is substantial evidence to support the ALJ's RFC determination.

**C. <u>Summary</u>**

Finding no legal error in the ALJ's decision and finding that substantial record evidence supports his conclusion that Plaintiff is not disabled, the court cannot reverse the Commissioner's decision.

**IV.   Conclusion**

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that the Defendant's cross motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

---

[116]     <u>See</u> Tr. 291.

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 2nd day of July, 2013.

Nancy K. Johnson
United States Magistrate Judge

24